THE ATTORNEY GENERAL *vs.* PURMORT and others.

PURMORT and others *vs.* M'CREA & THE ATTORNEY GENERAL.

Where P. contracted with M. for the purchase of land, and afterwards mortgaged it to the state, before he had paid for the same, or obtained a conveyance from M., and the mortgage was afterwards foreclosed, and the premises bid in by the comptroller in the name of and as the agent of M., and P. afterwards, under the representation of M. that he had settled with the state or was holden for the payment of the mortgage, took from him a warranty deed of the premises, and gave back a bond and mortgage for the purchase money, including the amount of the mortgage to the state, the whole of which purchase money was paid by P., and M. afterwards denied the authority of the comptroller to bid in the premises for him as his agent, and refused to pay such bid, whereupon the attorney general filed an information against P. and his grantees to foreclose the original mortgage to the state, and they filed a cross bill against M. and the attorney general to compel the former to pay off the mortgage so as to relieve the premises therefrom ; *Held*, that M. was bound to pay off and discharge the mortgage to the state, and to indemnify P. and his grantees against the same.

March 15.

THE information by the attorney general, in the first of the above causes, was filed to foreclose two mortgages given to the state, by John Purmort and wife, in September, 1813 ; but both for the same debt and upon the same premises, the last being given to correct a mistake in the description of the premises in the first. The mortgages were given by Purmort

for the security of a loan of $1000 from the state. The information stated, among other things, that the mortgages were attempted to be foreclosed under the statute, and in April, 1818, were bid off by A. M'Intyre, the comptroller, for and in the name of M'Crea, for an amount equal to the principal and interest, and the costs of foreclosure; that by the terms of sale, under the law as it then stood, the purchaser was required to pay down the costs of the foreclosure, and the whole interest due at the time of sale, and one eighth of the principal monies, and to secure the residue by bond and mortgage on the premises, or other unencumbered real estate; that M'Crea was not present at the sale, and did not comply with such conditions; and he afterwards denied the authority of the comptroller to bid off the property for him, and wholly disaffirmed the purchase; that a suit was subsequently instituted, in the name of the people, against M'Crea, in the supreme court, to recover the amount of the bid, and a verdict was found against him, subject to the opinion of the court, and the judgment was afterwards arrested; that the mortgagor had conveyed certain undivided portions of the premises to his children, the other defendants in the information; and that the mortgage monies, to the amount of about $2000, including interest, remained unpaid.

The defendants, by their answers, admitted the allegations contained in the information; but they averred and insisted that A. M'Intyre bid off the mortgaged premises at the attorney general's sale, in 1818, as the agent of M'Crea, and with his knowledge and consent; and that the defendant J. Purmort, believing that the lien and encumbrance of the mortgages to the state had been fully paid off and extinguished by M'Crea, afterwards accounted with and paid to M'Crea, in good faith, the full amount of the mortgages. By the report of the master, the amount due to the state upon the mortgages was ascertained to be $2036,40, on the 5th of August, 1831, including interest.

The defendants in the first cause, shortly after putting in their answer, filed their bill in the second cause against M'Crea and the attorney general, in the nature of a cross-bill, for the purpose of having the causes heard together, and

to compel M'Crea to pay off and satisfy the mortgages to the state. The complainants in the second suit alleged that John Purmort, the elder, in 1812 and prior thereto, was in possession of the mortgaged premises, a lot of about 35 acres in the county of Essex, as a purchaser thereof and under color of title ; that in 1812 he discovered that his title was defective, and that the defendant M'Crea had acquired a valid title to the premises, under a sheriff's sale ; that having made valuable improvements upon the premises, he was anxious to secure the legal title, and for that purpose he entered into an agreement with M'Crea, by which the latter agreed to release his interest to Purmort for $2000, payable in four equal annual payments from the first of May, 1812, with interest annually, the one half thereof payable in bar iron ; that he continued in possession under that agreement until the 16th of September, 1819, when M'Crea gave him a deed for the premises ; and that in the mean time he obtained the loan from the state and gave the bond and mortgages above mentioned, to secure the payment thereof, believing that he should be able to perfect his title under the agreement with M'Crea. The complainants further alleged that J. Purmort paid $215 to the state, on account of the interest on the loan ; but a portion of the interest remaining unpaid in 1817, the mortgages were put into the hands of the attorney general to foreclose ; that the attorney general having been informed that Purmort had not perfected his title, and that M'Crea had been privy to the obtaining the loan upon a mortgage of the premises, threatened to make M'Crea a party to proceedings to foreclose the mortgages, so as to charge his title to the premises, with the lien of the mortgage debt ; that to prevent such proceedings against himself, and to protect his own interest as well as to benefit Purmort, who was not able to purchase in the premises upon the terms required on a sale thereof upon a foreclosure of the mortgages, M'Crea agreed to purchase in the premises upon the sale, and to comply with the conditions thereof ; and that after the premises were so purchased in by M'Crea, Purmort should endeavor to sell the same for enough to pay the amount of M'Crea's bid, and what was still due under the agreement of May, 1812, and that the balance for which

he should sell the premises, if any, should be retained by Pur-
mort ; and which agreement the defendants alleged was evi-
denced by written documents under the hand of M'Crea ;
that before the day of sale, M'Crea made an arrangement
with M'Intyre, the then comptroller, to bid off the premises,
for him and in his name, as his agent ; that the same were
bid off by M'Intyre accordingly, for $1158,22, the amount
then due on the mortgages, including costs. The complain-
ants also alleged that about the 16th of September, 1819,
Purmort not having been able to sell the premises, and
M'Crea having represented to him that he had complied with
the conditions of the sale on the foreclosure of the mortgages,
and that he had assumed and provided for the payment of the
whole debt, whereby the lien and encumbrance of the mort-
gages were extinguished, and Purmort supposing such rep-
resentations to be true, agreed to purchase the premises from
M'Crea for $5100, which included the amount due the lat-
ter under the agreement of 1812, and the amount bid for him
by M'Intyre on the foreclosure sale ; that M'Crea thereupon
gave him a deed for the premises, and Purmort and his wife
gave back to M'Crea a bond and mortgage for the purchase
money which has since been paid ; and that the deed from
M'Crea to Purmort contained the following covenants, in ad-
dition to the usual covenants of seisin and quiet enjoyment
against all estates, charges, conditions and encumbrances, and
for further assurance : " And the said party of the first part,
for himself and his heirs, covenants to warrant, and by these
presents forever to defend the premises, and every part and
parcel thereof, with their appurtenances, unto the said party
of the second part, his heirs and assigns, against the claims of
all persons whomsoever ; and if he or they shall be legally
evicted, to pay the value of the premises with the improve-
ments at the time of such eviction, with the legal and neces-
sary charges in defending the same, *if by reason of any encum-
brance of the said party of the first part, his heirs or assigns.*"
The complainants further alleged that J. Purmort, the elder,
supposing that he had a perfect title to the premises, after-
wards conveyed cértain undivided portions thereof to three
of his sons, the other complainants, who were in possession

thereof at the time of filing their bill; that in 1827, Purmort and his wife learned, to their great surprise, that M'Crea had not complied with the conditions of the foreclosure sale, and that he had refused to do so, by reason whereof, as the complainants were advised, such sale was void, and the lien of the state upon the premises was not extinguished; that in consequence of such default of M'Crea, the attorney general had commenced proceedings in this court against the complainants in this suit; that until after the commencement of such proceedings, they supposed that M'Crae, under the covenants in his deed, would be bound to indemnify them against the mortgages to the state, and they did not know that there was any thing peculiar in the covenants; but, upon the inspection of the printed covenants of warranty in the deed, by counsel, the following words were found to have been added to the printed warranty, in the hand-writing of M'Crea : "if by reason of any encumbrance of the said party of the first part, his heirs or assigns;" that M'Crea now insists upon that written clause as qualifying all the covenants in the deed, and as exonerating him from any obligation to indemnify them against the encumbrance of the mortgage to the state ; that M'Crea was a counsellor of the supreme court, and prepared the deed, without any counsel having examined it on the part of the grantee, and delivered it to him as a good warranty deed of the premises, and represented it as such, without calling his attention in any manner to the written clause, or explaining it to him ; that if he had known the deed contained such a special clause, he would have objected to receiving the same ; and that M'Crea inserted the written clause in the deed, knowing that the mortgages to the state had not been satisfied, and fraudulently concealed that fact from Purmort, and inserted the said clause to shield himself from responsibility when the state of the encumbrances should be discovered. The complainants further alleged that they had requested M'Crea to pay off the mortgage to the state and indemnify them against the costs of foreclosure, which he refused to do. They therefore prayed that the procceedings in the foreclosure suit might be stayed until the defendants in

this suit had answered; that both suits might be heard together; and for general relief.

To this bill the attorney general put in a general answer, leaving the complainants to proof of the matters charged in their bill, and submitting the rights of the people of the state to the decision of the court.

An answer on oath from the defendant M'Crea being waived by the complainants, in their bill, he put in an answer, without oath, in which he admitted many of the allegations in the bill, as to which there was no dispute between the parties, but denied the principal facts upon which the complainants claim to have equitable relief rested; particularly the agreement with Purmort to bid off the premises at the sale upon the foreclosure of the mortgages, or that he authorized M'Intyre to bid off the premises for him; or that the subsequent sale and conveyance to Purmort had any connection with the agreement of May, 1812, or with the mortgage to the state, or the bid made by M'Intyre; or that he represented to Purmort that he had discharged, or assumed the mortgages to the state, or had complied with the conditions of the sale under the mortgages. And the defendant insisted that no right or cause of action had accrued to the complainants within six years before the filing of their bill. Both causes were brought to hearing together; the first upon bill and answer, and the last upon pleadings and proofs.

*A. C. Paige,* for the attorney general.

*B. F. Butler,* for the Purmorts.

*J. Tallmadge & L. H. Palmer,* for the defendant M'Crea.

The Chancellor. When this case was formerly before me, upon the demurrer of the defendant M'Crea to the bill of the Purmorts for want of equity, I came to the conclusion that the facts stated in the bill were sufficient to entitle the complainants to equitable relief. And as the defendant did not think proper to appeal from the decree overruling the demur-

rer, that decision must now be considered as the settled law of this case, and cannot again be opened for discussion here. This disposes of the objection of the defendant's counsel, that the complainants had a perfect remedy at law upon the covenants in the deed of M'Crea, or by an action for the alleged deceit, and that they had no right to come into this court for equitable relief. Another and a conclusive answer, however, to this ojection, is, that it was not insisted upon by the defendant in his answer; and it is too late for a defendant to make the objection for the first time at the hearing, upon pleadings and proofs, that the complainants had an adequate remedy at law. The rule on this subject is so well settled that it is unnecessary to refer to any authorities in its support. I shall therefore proceed to examine the case on its merits.

The right of the complainants to relief upon their cross-bill, or more properly their original bill in the nature of a cross-bill, depends principally upon the transactions which occurred at the time of giving the deed to John Purmort, the elder, in 1819, and upon the construction of the covenants contained in that deed. It is necessary, however, that I should advert to certain transactions which had previously occurred, for the purpose of ascertaining what were the rights of the several parties, under the agreement of May, 1812, the subsequent mortgages to the state, and the purchase of the premises, by M'Intyre in the name of M'Crea, at the sale upon the foreclosure.

By the agreement of May, 1812, Purmort, who was previously in possession under claim of title, became the purchaser of all of the interest of M'Crea in the premises, for the consideration of $2000, to be paid in four yearly payments. And by the acceptance of that agreement, he became the tenant at will of the premises, to M'Crea, with a right in equity to compel a specific performance of the contract. This equitable interest was transferred to the state by the giving of the mortgages by Purmort; and a valid equitable interest in the premises would pass to the purchaser under the foreclosure and sale by the officers of the state, subject to the lien of M'Crea for the unpaid purchase money under the contract of May, 1812. It is alleged, in the answer of M'Crea, that this contract was abandoned by the parties previous to the new

agreement which was made in September, 1819 ; but he has introduced no proof to sustain this allegation in his answer, and the contrary is fairly inferrible from the circumstances of the case and the continued possession of Purmort. Indeed, it was impossible for the original parties to make any valid agreement to rescind this contract, without the assent of the state, which had become the equitable assignee thereof by virtue of the mortgages. If the purchase by M'Intyre, in the name of M'Crea, was unauthorized, the latter might afterwards elect to affirm the contract of purchase made for him and in his name ; and there is no evidence that he had dissented from or disaffirmed such purchase previous to the giving of the deed to Purmort, in September, 1819. On the contrary, I think the letters which are made exhibits in the cause show that he had elected to affirm that purchase. In October, 1820, M'Intyre writes to him as follows : " Dear Sir—More than two years ago you became the purchaser of land mortgaged to the state, in Essex county, by John Purmort. You had not the money at the time to make the first payment, but you engaged to pay it in a few weeks, and to give your bond and mortgage for the balance, as is usual and as required by law. You have however totally neglected it. It is high time the business was closed, and I must beg your immediate attention to it." In his answer to this letter, written a few days thereafter, the defendant M'Crea quotes that part of the letter in which M'Intyre states that he was to have complied with the terms of the purchase in a few weeks ; and so far from denying any part of the statement of M'Intyre as contained in that letter, he makes an excuse for not having complied with the terms of sale, and requests further indulgence to enable him to obtain a payment from Purmort upon his bond and mortgage, taken upon the conveyance of the premises to him the year previous. And in his letter to Dexter, the attorney general's clerk, as late as March, 1826, he recognizes the validity of the purchase in his name, and says he expects to comply with the terms of the sale as he had agreed ; and alleges that he had complied with them in part. These letters, independent of the testimony of Nicholson and Judge Finch, contain written evidence that he had authorized M'Intyre to

bid off the premises in his name originally, or that he had ratified and affirmed that act afterwards. The payment made thereon, which he alludes to in the letter to Dexter as not having been noted on the books of the comptroller, was probably the costs of the foreclosure, which may have been advanced by him and paid over to the attorney general; which costs, from the statement of the amount bid beyond the principal and interest then due, was about $52.

If I am right in the conclusion at which I have arrived on this part of the case, M'Crea, by the purchase of M'Intyre for him and in his name, had become the owner of Purmort's equitable interest in the premises under the agreement of May, 1812, upon complying with the terms of sale ; and having the legal title in himself previous to that time, the right of redemption of Purmort in this mere equity would have been merged or extinguished by the payment of the amount of the bid, without any written conveyance of the attorney general, so as to deprive Purmort of the right to claim a specific peformance of the agreement of May, 1812. And Purmort's equitable interest being sold for the full amount due to the state on the mortgages, he had a right to insist that the mortgage money should be paid by M'Crea, as the person who, in equity, was primarily liable to the state. As between M'Crea and Purmort, the mortgage debt was extinguished, and M'Crea was, in equity, bound to pay it and indemnify Purmort against it. But until the terms of the mortgage sale were complied with, the state had a lien upon the premises, in the hands of M'Crea, for the unpaid purchase money on that sale. And this lien was, in equity, although perhaps not at law, an encumbrance of M'Crea upon the premises conveyed to Purmort by the deed of September, 1819. The complainants have therefore an equitable right to insist that he should be decreed to pay off and extinguish the debt due to the state, so as to indemnify them against that encumbrance ; and that equitable obligation arises from the deed of September, 1819, and the situation of the parties at the time that deed was given, independent of any representations or assumption of the payment of the state debt, by M'Crea, in September, 1819, which are not contained in the deed itself.

If I am wrong, however, in this view of the case, and the foreclosure is to be considered as a mere nullity, what was the situation and what were the rights of the parties at the time of making the new contract between Purmort and M'Crea at the time of giving that deed? Purmort was then in the possession of the premises under the agreement to purchase, made with M'Crea in 1812, which agreement had never been entirely abandoned; the alleged agreement of M'Crea to purchase in the premises on the foreclosure of the mortgages being perfectly consistent with the contract of 1812, as it was the interest acquired under that contract, which was covered by the mortgages to the state. And as time was not made an essential part of the contract, the neglect of Purmort to pay the money at the times specified, was not, in equity, a forfeiture of his rights, under the agreement of 1812. (*Getchell* v. *Jewett,* 4 *Greenl. Rep.* 350. *Brashier* v. *Gratz,* 6 *Wheaton's Rep.* 528.) As I have before observed, there is no evidence in this case of the abandonment of the agreement of 1812, by either party; and the continuance of Purmort in possession without the payment of rent, or any attempt to remove him, is strong evidence that the fact was otherwise. The amount due upon that agreement, in September, 1819, was about $3032, and Purmort was entitled to a specific performance thereof upon the payment of that sum; but he would have been obliged, in that case, to pay off and discharge the mortgages to the state, which at that time amounted to about $1200 more. Upon the payment of these two sums, considering the mortgage sale a nullity, he would have obtained a perfect title to the premises, discharged of all claims whatever. I cannot believe, therefore, that it was the intention of either of the parties, at the time of the execution of the deed of September, 1819, that Purmort should pay the whole consideration mentioned in that conveyance, fifty-one tons of iron, estimated at $100 the ton, and should also be liable to pay off and discharge the mortgages to the state. It will be seen that the $5100 secured by Purmort's bond and mortgage at that time, discounting the interest on the payments, which were not on interest, amounts to just about the two sums due to the state upon the mortgages, and to the de-

fendant M'Crea under the agreement of May, 1812. I also think the defendant is under a mistake in supposing, as alleged in his answer, that the written clause, at the end of the printed covenants of warranty in the deed, was inserted by him for the purpose of showing that he was not liable for the payment of the amount due to the state, and did not intend to warrant the title against that encumbrance. I think it is very evident, from the whole transaction, that the written clause was inserted in the deed, by him, for a different and much more honest purpose. The printed blank, used upon that occasion, was from a form which I had myself prepared and had printed, to be used only in special cases. And the concluding clause, making the grantor liable, in case of eviction, for the full value of the premises, with the improvements, at the time of such eviction, without reference to the amount of the consideration expressed in the conveyance, was not usually inserted in full covenant warranty deeds. The defendant, although he admits that he delivered this conveyance to Purmort as a good warranty deed, and represented the same to him as such, had a right to insert the written qualification, of this extraordinary and unusal covenant, to pay the increased value of the premises, with the improvements, to the case of an eviction on account of an encumbrance created by himself. I am satisfied, therefore, that he inserted the written clause for this purpose only, and not to qualify or alter the legal effect of any of the other covenants in the conveyance. And this is, I think, the fair legal construction of this written clause, when taken in connection with the printed covenants of warranty, &c. Any other construction of this clause would be inconsistent with the admission of M'Crea that he delivered the conveyance as a good warranty deed, and with the proof of his declarations at the time the conveyance was given. It would also operate as a fraud upon the grantee; for if the written clause should be construed as a restriction upon the covenants, of seisin and for quiet enjoyment, and upon the general covenant of warranty against the lawful claims of all persons, it would render those covenants nugatory, and only amount to a warranty against the encumbrances which

the grantor had himself created: that is, to very little more than a quit claim deed.

The testimony of Nicholson and Judge Finch, who were present when the deed was given, establishes the fact, beyond all question, that the parties acted upon the assumption that M'Crea had become responsible for the payment of the debt due to the state, and that the amount of such debt was included in, and formed a part of, the consideration of the $5100 bond and mortgage, which has since been paid. And the letters of M'Crea, of October, 1820, and March, 1826, show that he considered himself as under obligation to pay that debt, long subsequent to the conveyance of September, 1819.

I cannot discover any valid objection to the complainant's claim arising out of the statute of frauds. The amount of the debt was included in the bond and mortgage to M'Crea, under the assumption or understanding that M'Crea had become responsible to the state for the payment thereof; and Purmort having subsequently paid the whole amount of that bond and mortgage, under the supposition that the state debt had been discharged, the defendant M'Crea is, in equity, bound to make good his representations made to Purmort at the time when such bond and mortgage was given. Neither can the statute of limitations avail the defendant in this case. Even if there had been an express promise to pay the debt to the state, upon which Purmort might have sustained an action at law if such promise was not complied with, the letter of March, 1826, is a recognition of an existing indebtedness at that time from which a new promise might be inferred. But, in this case, the bond and mortgage were given upon the assumption that M'Crea had already become responsible to the state for the payment of the debt; and this being a case of equitable cognizance merely, the six years limitation is not applicable.

Upon every principle of justice and equity, the defendant M'Crea is bound to pay off and discharge the mortgages to the state, and to fully indemnify the complainants against any costs or charges on account thereof. I shall therefore direct a decree to be entered, in these suits, requiring the defendant M'Crea to pay to the attorney general the amount

reported due by the master, with interest thereon from the date of the report, together with the costs of the attorney general in both suits; and that he also pay to the complainants in the last suit their costs in both. If the amount due to the state, and the attorney general's costs, are not paid by or collected from M'Crea within three months after the entering of the decree, the mortgaged premises must be sold in the usual manner, for the payment thereof, with the usual resort over against the mortgagor for any deficiency which may exist. And in that case, the complainants in the second suit are to be permitted to collect the whole amount of the decree against the defendant M'Crea.