# REPORTS OF CASES

## DETERMINED IN

# THE SUPREME COURT,

## OCTOBER TERM, 1870.

### No. 2,458

ISAAC C. STEELE et al., RESPONDENTS, v. FRANCISCO Z. BRANCH, RA-
MON J. BRANCH, LEANDRO R. BRANCH, FRANK BRANCH
AND MOSES CERF, APPELLANTS.

CONSTRUCTION OF CONTRACTS.—In construing contracts, it is impossible to
prescribe any general and uniform rule by which the question whether
the time within which an act is to be performed is of the essence of the
agreement, but each case must be decided upon its own circumstances.

IDEM.—The general rule of equity is, that time is not of the essence of the
contract.

IDEM.—In a contract for the sale of land which contains a covenant that the
vendees shall, as a part of the consideration, discharge and satisfy at its
maturity, a mortgage thereafter to become due, and which also contains
a stipulation to the effect, that, should the vendees fail to comply with
their part of the agreement, the contract shall be null and void, and the
land shall revert to the vendors—time is not of the essence of the con-
tract, and the provision in the contract that the land shall revert to the
vendors in case the vendees fail to comply with its provisions, is inserted
by way of penalty, to induce a prompt performance of the contract and
would not ex proprio vigore work a forfeiture for failure to perform strict-
ly in point of time, where the vendees acted in good faith and the vend-
ors were not damaged thereby.

IDEM.—If the contract also contains a covenant that the vendees shall, within
a specified period, intermediate between the time of making and the time
for the final performance of the same, make certain improvements on the
land sold, and also a stipulation to the effect that if the vendees fail to
comply with their part of the agreement the contract shall be held null
and void and the land shall revert to the vendors; should the vendees
make default and no steps be taken by the vendors towards a recision of

the contract until after the expiration of the time for its completion, they will be held as having acquiesced in the breach of the condition, and waived the forfeiture if any occurred thereby

APPEAL from the District Court of the Fourth District, City and County of San Francisco.

The facts are stated in the opinion.

*Clarke and Carpentier*, for Appellants.

*First*—Time may be made of the essence of a contract. The doctrine of Lord Thurlow that a purchaser could not so stipulate, rested on no principle, and has long been exploded. In equity, time is held to be of the essence of a contract in case of direct stipulation, or necessary implication. And the conduct of the parties may be resorted to, to show that they regarded time essential. (*Benedict* v. *Lynch*, 1 Johns, C. R. 370; *Wells* v. *Smith*, 2 Edw. C. R. 78; *same case*, 7 Paige, 22; *Parkin* v. *Thorold*, 16 Beav. 65; *Lord Cranworth*, 1 Sim. U. S. 1; *Ruckman* v. *King*, Am. Law Reg, U. S. March 1870; *Nokes* v. *Lord Kilmony*, 1 De Gex & Sm. 440; *Wiswall* v. *McGown*, 2 Barb. S. C. R. 270; *Lloyd* v. *Callett*, 4 Bro. C. C. 469; *Seton* v. *Slade*, 7 Ves. 270.

*Second*—Time of performance of the plaintiff's covenants was of the essence of the contract now sought to be enforced, and being disregarded by them without legal excuse, they have forfeited the right to a conveyance. See the cases referred to above under first point, and also: 3 Leading Cases in Equity, 82–3; Story's Eq. Jur. §776, and cases cited in notes. (*Barnard* v. *Lee*, 97 Mass.; *Scott* v. *Fields*, 7 Ohio, 908; *Natson* v. *Barrett*, 1 Iowa, 302; *Bodine* v. *Gladding*, 9 Harris, 50; *Hipwell* v. *Knight*, 1 Y. and Call. Ex. 415; *Hudson* v. *Bartram*, 3 Madd. 447; *Coslake* v. *Till*, 1 Russ. 376; 1 Sug. on Vend. 359, (7th Am. Ed.)

*Third*—The inadequacy in the agreed price, and the great increase in the value of the property in question beyond the price agreed to be paid, render it inequitable to enforce a specific performance where the purchasers have suffered default.

*Fourth*—The plaintiffs did not keep their earlier covenants, to pay $10,000 on account of the mortgage, or to expend that amount in permanent improvements.

The non-performance of these covenants was also a cause of forfeiture.

*Fifth*—The Court erred in deciding that the deed from defendants Branch to defendant Cerf was fraudulent, and in ordering it set aside.

*Williams & Thornton,* and *Campbell, Fox & Campbell,* for Respondents.

*First*—Time is not of the essence of the contract sought to be enforced. (*Lecombe* v. *Steele,* 20 How. 104; *Ahl* v. *Johnson,* Id. 120; *Farley* v. *Vaughn,* 11 Cal. 236; *Bernard* v. *Lee,* 97 Mass. 93; *Edgarton* v. *Peckman,* 11 Paige, 352; *Brown* v. *Covillaud,* 6 Cal. 571; 2 Lead. cases in Eq. 667, 696; 3 Id. 74–5, 83–4–5; Adams, Eq. 187 (79) (184) and note, 252 (88) and note; *Brashier* v. *Gratz,* 6 Wheaton, 533, *Taylor* v. *Longworth,* 14 Peters, 172; 7 Paige, 22; *Miller* v. *Bear et al,* 3 Paige, 466; *Kercheval* v. *Swope et al,* 6 Monroe, 362; 1 Sugden on Vendors, 310–11 *et seq;* 2 Parsons on Cont. 542-544, notes; 6 Madd 20; *Smedberg* v. *More,* 26 Wend. 238; *Voorhees* v. *De Meyer,* 2 Barb. 37, 47; Story's Eq. §§775–6; Willard's Eq. 292; *Waters* v. *Travers,* 9 John. 465.

*Second*—The plaintiffs fully performed on their part all the covenants of the said contract.

*Third*—Before the maturity of the said note, plaintiff paid on the same upwards of $12,000, and the short delay in payment of the balance was excusable, having been accorded by the holders of the mortgage. (Story's Eq. §776, and authorities under first point.)

*Fourth*—The covenant to pay $10,000, on account of the mortgage, or to expend that amount in improvements before the 26th day of December, 1867, was waived by the defendants.

*Fifth*—The price paid was the full value of the property at the date of the contract, and subsequent fluctuations in

value are not allowed to prevent a specific performance. (*Willard* v. *Taylor*, 8 Wall. 571.)

*Sixth*—The plaintiffs have been in possession ever since the date of the contract, and had paid every dollar of the purchase money, principal and interest, four days before the Messrs. Branch attempted to repudiate the contract by a conveyance to defendant, Moses Cerf.

*Seventh*—The plaintiffs fully performed the contract upon their part, without unreasonable delay, and the defendants were not injured by any matter or thing urged by them in defence.

CROCKETT, J., delivered the opinion of the Court, WALLACE, J., TEMPLE, J., and RHODES, C. J., concurring.

The plaintiffs and the defendants, except the defendant Cerf, entered into a written contract in July, 1866, whereby the latter sold and agreed to convey to the former the premises in controversy, consisting of five leagues of land. At the date of this contract the said lands, or a large portion thereof, were subject to an unsatisfied mortgage made by the defendant Francisco Z. Branch to one Sparks for the sum of $24,000; or thereabouts, which, by the terms thereof, was to become due and payable on the 26th day of December, 1868, and which bore interest at a stipulated rate. As the consideration for said land, the plaintiffs undertook, in said contract, to satisfy and discharge the said mortgage at the maturity thereof, and in the meantime to pay the accruing taxes on the land, and also, on or before the 26th of December, 1867, to erect upon the said premises permanent improvements of the value of $10,000; or, in the event that said improvements so to be erected should be of less value than $10,000, the plaintiffs would discharge, on or before the said 26th day of December, 1867, so much of the principal of the said mortgage debt as should be equivalent to the difference between the value of the improvements erected and the said sum of $10,000. It was further stipulated in the contract, that upon the payment by the plaintiffs of the said mortgage debt and the interest, and the canceling of said

mortgage of record and the payment of the taxes as stipulat-
ed in the contract, the said defendants would convey the
land to the plaintiffs by a good and valid title.  The con-
tract also contained a stipulation in the following words:
"Should the parties of the second part fail to comply with
their part of this agreement, then said agreement is to be
null and void, and the lands, with all the improvements
thereon, shall immediately revert to the parties of the first
part, and the parties of the second part shall pay all damages
which may result from a failure to comply with said agree-
ment to the parties of the first part.  The mortgage and
mortgage debt were assigned by Sparks to Flora Harloe,
wife of Marcus Harloe, and were held by her at the maturity
thereof.  There is evidence in the cause tending to prove
that the price agreed to be paid by the plaintiffs was, at the
date of their contract of purchase, the fair market value of
the land; but that between the date of the contract and the
maturity of the mortgage the land had advanced rapidly in
value, and at the last mentioned date was worth at least
$100,000 or more.  The proof also shows that the plaintiffs
failed to erect upon said premises on or before the 26th day
of December, 1867, improvements of the value of $10,000;
nor did they on or before the said date pay upon the
principal of said mortgage debt the difference between the
value of the improvements actually erected and the sum of
$10,000; but prior to the maturity of the mortgage they had
paid on account thereof a large sum, amounting to $10,000
or $12,000.  It appears that a few days before the maturity
of the mortgage, Harloe, the holder thereof (who resides in
Santa Barbara county,) sent the note and mortgage, togeth-
er with a release of the mortgage, duly executed, to an agent
in San Francisco, with authority to receive the balance due
upon the mortgage debt; and upon the payment thereof, to
deliver to the plaintiffs the note and mortgage, together with
the release; but these papers were not received at San Fran-
cisco until several days after the mortgage debt had become
due.  It further appears that it had been previously agreed
between Harloe and the plaintiffs that the money was to be

paid in San Francisco, and that the plaintiffs had made an arrangement with the firm of Hatch & Co. to furnish them with the necessary funds to discharge the mortgage at the maturity thereof; and that the said firm had on hand the necessary sum, which was subject to the order of the plaintiffs at the time of the maturity of the mortgage, and for some time before and after that date. The proof also tends to show that on the arrival of the note and mortgage in San Francisco, the agent of Harloe did not insist upon the immediate payment by the plaintiffs, but consented, either tacitly or expressly, to a few days delay, and full payment was not made until the 11th of January, 1869, on which day the plaintiffs paid the full amount due upon the mortgage, whereupon the note and mortgage, together with the release, were delivered to them by the agent of Harloe, and the release was filed for record in the proper office on the 16th of January, 1869. The proof also tends to show that a few days after the maturity of the note and mortgage, and before the payment thereof by the plaintiffs, the defendant Francisco Z. Branch offered to pay to said Harloe the amount due upon said note and mortgage, and had provided the necessary sum for that purpose; but Harloe declined to receive payment from Branch at that time, on the ground that he had sent the note and mortgage, with the release, to San Francisco, and supposed that the money either had been or within a day or two would be paid by the plaintiffs, and for that reason he declined for the present to receive payment from Branch. On the 15th of January, 1869, the other defendants conveyed the said land by absolute deed to the defendant Cerf, who claims to have purchased the same for a valuable consideration, without notice that the mortgage debt had been fully paid by the plaintiffs before that time. But it is not pretended that Cerf had not actual or constructive notice of the contract between the plaintiffs and the other defendants. On the contrary, in taking his deed he acted on the assumption that the plaintiffs had forfeited their rights under the contract by their failure to perform its conditions. These are the material facts of the case, and the

action is brought by the plaintiffs to compel a specific performance of the contract by the defendants other than Cerf, and to set aside the deed to the latter as fraudulent and void and a cloud upon the plaintiffs' title. The Court below entered a decree for a specific performance, and annulling the deed to Cerf, as prayed for in the complaint. The defendants having moved for a new trial, which was denied, have appealed to this Court.

The principal question in the case is, whether or not the stipulated time for the payment of the mortgage debt by the plaintiffs was of the essence of the contract, and whether they have lost their right to compel a specific performance by their failure to discharge the mortgage on or before the precise day on which it became due, or by their neglect to erect upon the premises the necessary amount of improvements, or in default thereof to reduce the amount of the principal of the mortgage debt within the stipulated time, to the extent of the difference between the value of the improvements which were erected and the sum of $10,000. In construing contracts it is often one of the most perplexing questions with which Courts of equity have to deal, whether the time within which an act is to be performed is of the essence of the agreement. In the very nature of the case it is impossible to prescribe any general and uniform rule on the subject, and each case must necessarily be decided upon its own circumstances. In all such cases the inquiry is as to the intention of the parties to the contract at the time it was executed. If, upon the face of the contract and from the surrounding circumstances, it clearly appears to have been the distinct understanding and agreement of the parties that if the stipulated act was not performed, within the specified time, certain consequences were to follow, and if default be made in the performance within the time, a Court of equity will give no relief unless a strict performance was either waived by the party or is excused on some special ground of equitable cognizance.

I discover nothing in the record to justify the conclusion that the defendants waived any rights which the contract

gave them in respect to a strict performance by the plaintiffs of the stipulations as to the time for the payment of the mortgage debt. On the contrary, they appear to have been eager to avail themselves promptly of any apparent default of the plaintiffs in this respect. Nothing in their previous conduct had deluded the plaintiffs into the belief that they did not intend to stand upon their strict rights in respect to this payment; and certainly nothing occurred afterward which could possibly be construed into a waiver. If it should be held that the time stipulated for the payment by the plaintiffs of the mortgage debt was of the essence of the contract, they have shown no excuse for their default, which of itself would be deemed in a Court of equity as an independent ground of relief. The excuses alleged are, first, that the note and mortgage, by some accidental delay in the mails, were not received in San Francisco until several days after the debt became due; second, that though Hatch & Co. offered them the necessary sum to pay the debt, it suited their convenience better to raise the money by another method, and they delayed the payment a few days for this purpose; third, that Harloe, the holder of the mortgage, consented to this delay. On the first point it is sufficient to say that the note and mortgage, on their face, were payable in Santa Barbara county, and the plaintiffs had the right to pay them there; and if they saw fit to stipulate with Harloe for payment at a different place, they did so at their own risk, and the defendants could not be prejudiced thereby. The defendants were not responsible for the delay which resulted from changing the place of payment. As to the second point, the plaintiffs had no right, if time was of the essence of the contract, to defer the payment to suit their convenience; and if Harloe assented to the delay, however obligatory it may have been as between Harloe and the plaintiffs, the defendants were not bound by a stipulation to which they were not parties, and to which they did not assent. The whole question, therefore, resolves itself into the proposition, whether or not, on the face of the contract,

and in view of all the circumstances under which it was executed, time was of the essence of the agreement.

The general rule of equity is that time is not of the essence of the contract, (*Brown* v. *Covillaud*, 6 Cal. 571; *Brashier* v. *Gratz*, 6 Wheat. 528; *Ahl* v. *Johnson*, 20 How. U. S. 511; *Hunter* v. *Town of Marlboro*, 2 Wood E. M. 168; 3 Leading cases in Equity, 76; *Wells* v. *Wells*, Fred. Ch. 596; *Runnells* v. *Jackson*, 1 How. Miss. 358; *Attorney General* v. *Purmort*, 5 Paige, 620; *Hepburn* v. *Auld*, 5 Cranch, 262; *Miller* v. *Steen*, 30 Cal. 407; *Green* v. *Covillaud*, 10 Cal. 317).

Even though the contract contain a provision for forfeiture in case of a failure to perform strictly in point of time, nevertheless, a Court of equity will examine the whole contract in the light of the surrounding circumstances, to ascertain whether it was the real intention of the parties that the party in default should lose the right secured to him by the contract. A stipulation to the effect that in case of a default a party shall lose his rights under the contract, is often inserted by way of penalty, merely with a view to induce a more prompt performance, and not with the intention that a failure strictly to perform, in point of time, shall work an absolute forfeiture. When such appears to have been the intention of the parties, if the party in default afterward tenders a performance promptly and with reasonable diligence, and if the other party has suffered no damage by the delay, and particularly if the property has not materially enhanced in value during the time of the delay, a Court of Equity will not enforce the forfeiture, but will decree a specific performance, notwithstanding the default, provided it appears that the party in default has acted in good faith and gives some reasonable excuse for the delay. In this case, I think the provision in the contract, to the effect that if the plaintiffs should fail to comply with its conditions, the land and improvements should revert to the defendants, was inserted by way of penalty, merely to induce a prompt performance by the plaintiffs, and was not intended, *ex proprio vigore*, to work a forfeiture in case of a failure to perform strictly in point of time.

The plaintiffs were paying the then fair market value of the land, and the' principal object of the defendants in making the sale was to provide for the payment of the heavy debt secured by the mortgage to Sparks. None of the parties, apparently, contemplated that the land was to raise rapidly in value before the maturity of the mortgage, and inasmuch as the property of the defendant, F. Z. Branch, was to remain bound for the mortgage debt, and he was to continue personally liable therefor, it was important to him that the plaintiffs should relieve him and his property from this liability and save him from further annoyance on account of the mortgage debt after its maturity, and the provisions for a forfeiture was evidently inserted to secure this result. That result has been obtained without damage to the defendants, notwithstanding the short delay in the payment; and the clause for a forfeiture has thus accomplished the end for which it was inserted, to wit: to secure a discharge of the mortgage without damage or annoyance to the mortgagor. The excuses offered by the plaintiffs for the short delay which occurred in the payment, though not of themselves sufficient as an independent ground of equitable relief, nevertheless furnish strong evidence of the *bona fide* of the plaintiffs, and show that they intended in good faith substantially to perform the contract. The clause in the contract requiring the plaintiffs to erect upon the premises improvements of the value of $10,000 before December 26, 1867, or in default thereof to reduce the principal of the mortgage debt before that date to the extent of the difference between the said sum of $10,000 and the value of the improvements erected, was obviously inserted for the purpose of protecting the defendants against any possible depreciation in the value of the land, whereby the defendants might suffer damage in case the plaintiffs failed to discharge the mortgage but, inasmuch as the land greatly increased in value and the mortgage was discharged by the plaintiffs, no damage to the defendants ensued from the breach of this condition. The purpose for which it was inserted has been faithfully accomplished. In

addition to this, I think the defendants, by their subsequent conduct, acquiesced in the breach of this condition and waived the forfeiture, if any had thereby occurred. They permitted the plaintiffs to remain in possession from the 26th day of December, 1867, until after the maturity of the mortgage in December, 1868, and took no steps toward a recision of the contract, and it was not until after default was made in the payment of the mortgage at maturity that the defendants appear to have entertained the belief that any forfeiture had occurred, and then only by reason of the default in that payment. They must be held, therefore, to have waived whatever advantages, if any, they might have claimed from the breach of the condition in respect to the improvements. The views which I have expressed in respect to the clause of forfeiture as affording no sufficient defence against a bill for specific performance under the circumstances disclosed in this record, are fully sustained by the following authorities, and many others which might be cited, to wit: *Secombe* v. *Steele,* 20 How. 104; *Ahl* v. *Johnson,* 20 How. 520; *Farley* v. *Vaughn,* 11 Cal. 236; *Barnard* v. *Lee,* 97 Mass. 92; *Edgerton* v. *Peckham,* 11 Paige, 352; *Brown* v. *Covillaud,* 6 Cal. 571; 2 Lead. cases in Eq. 667, 696; 3 Lead. cases in Eq. 74–5, 83–4–5; Adams Eq. 187 (79) (184) and note, 252 (88) and note; *Brashier* v. *Gratz,* 6 Wheaton, 533; *Taylor* v. *Longworth,* 14 Peters, 172; *Wells* v. *Smith,* 7 Paige, 22; *Miller* v. *Bear et al.* 3 Paige, 466; *Kercheval* v. *Swope et al.* 6 Monroe, 362; 1 Sugden on Vendors, 310, 311 *et seq.*; 2 Parsons on Cont. 542, 544 and note; *Nelson* v. *Reynolds,* 6 Madd. 20; *Smedberg* v. *More,* 26 Wend. 238; *Vorhees* v. *De Meyer,* 2 Barb. 37; Story's Eq. §§ 775–6; Willard's Eq. 292; *Waters* v. *Travers,* 9 John. 465.

I am therefore of opinion that the judgment ought to be affirmed, and it is so ordered.

SPRAGUE J., expressed no opinion.