MEM. — TENNEY J. having been employed in the trial of issues to the jury in the County of Washington, did not attend at this term.

## NATHANIEL CHAPMAN *versus* JOHN BUTLER & al.

The St. 1821, c. 62, § 5, in relation to the recovery of *betterments by action*, provides only for the case of one who is entitled to the improvements, and upon whom, while in possession, an entry has been made by the owner of the land, and the actual possession taken and withheld from the proprietor of such betterments. An action, therefore, founded merely on a possessory title, brought by one who had become such only by purchase, and who had never been in the actual possession, cannot be maintained.

A Court of Equity will give full effect to the statute of limitations, as well as throw out stale demands and claims. But when it perceives, that the party complaining has equitable rights, and that the remedy at law, might have proved to be insufficient; that the answer admits, that they have never been relinquished, or compensation made for them, and that they still exist; and alleges that no resistance has been made to the enjoyment of them up to the time of filing the answer; it will not refuse to give relief, being a case proper for it, although the claim has been outstanding for a long time.

Where it appeared that the improvements upon a tract of land had been conveyed by the defendant to the plaintiff in equity in the year 1818, and that an agreement had been then made between them, whereby the defendant was to retain the possession for two years, " and then quietly leave the possession, and put the plaintiff into possession of the same;" and where, before the expiration of the two years, the defendant held the possession under a title from the proprietor of the land, and within three years of the filing of the bill, procured a conveyance of the land to himself, and refused to relinquish the possession to the plaintiff; *it was held*, that the statute of limitations was not a bar to the relief sought for by the bill in equity.

Although in such case the defendant might legally purchase in the title of the owner of the land, yet if he makes use of it to defeat his own prior conveyance of the improvements, he does so in fraud of the rights of the plaintiff, and it is but just to prevent his making such use of that title.

Although an action might have been maintained upon the agreement, on the refusal of the defendant to give up the possession to the *plaintiff*, this remedy cannot be considered as adequate or perfect, when he could not have recovered the improvements which had been conveyed to him, and might only have recovered for excluding him from the possession for the term of time before the action was brought. Such remedy at law is not sufficient to prevent the maintenance of a suit in equity.

And if the defendant has made a conveyance of the land, which was made and received with a knowledge of the plaintiff's claim and in fraud of it, and without a valuable consideration paid, the grantee may be considered as designing to aid his grantor in preventing the plaintiff from obtaining possession of the improvements, or any compensation for them; and may with propriety be made a party to the bill, and to such decree as might appropriately have been rendered against the grantor.

BILL in equity. The facts in the case appear in the opinion of the Court, as do also the material parts of the bill and answers.

*F. Allen,* for the plaintiff, said that the claim of the plaintiff was originally limited to the possessory title, extending over the whole lot. The defendant has since that time united the legal and possessory title. If the sale of one half be *bona fide*, the sale of the other half is clearly fraudulent, and compensation should be made from that as far as it will go.

The statute of limitations cannot bar our claim, for we could not assert our right against the defendant until he purchased in the legal title, which was within six years. The statute of limitations is not pleaded, nor relied upon in the answer, and therefore cannot be urged in the argument. And the statute is no bar, because the defendants were guilty of a fraud which prevented the plaintiff from prosecuting his claim at an earlier period. It is no bar, because the defendant says that " he has never refused to deliver up said possession and betterments before the filing of this bill." And the possession of the land is demanded, and not the payment of money, unless in consequence of the defendant's own recent acts. It is no personal

contract between the parties, to be barred by the limitation of personal actions.

*W. G. Crosby*, for the defendants, contended that the claim of the plaintiff was not entitled to much consideration from the circumstance, that it is based upon a transaction of more than twenty years standing. Equity always discountenances neglect. 1 Story's Eq. 73; 1 Mad. Ch. 99; 2 Mad. Ch. 309.

The defendants set up in their defence the statute of limitations. It is said, that they are precluded from relying upon it, because it is not specially pleaded. It is embraced in their several answers, and that is sufficient. Rule of Court, 14, in 9 Greenl. 102.

The purchase in of the legal title of Gardiner, could not affect the rights of the plaintiff. That title might as well be holden by Butler as by Gardiner. This purchase then could not be considered as a fraud upon the plaintiff.

The plaintiff has a plain and adequate remedy at law, unless he has lost it by his own neglect. He might have taken possession, or have maintained an action against Butler, if he resisted, or have brought his action to recover the betterments under the statute, after Butler had taken possession, or he might have maintained an action upon the written agreement; and have recovered damages.

The bill cannot be maintained, because the plaintiff had never demanded possession, prior to the filing of the bill.

The part of the premises conveyed to John Butler, Jr. was free from all pretence of fraud, and without notice of any claim of the plaintiff and he is entitled to hold it.

It can be of no importance to the plaintiff, whether the legal title is held by Gardiner or by Jairus Butler. He has never hindered or obstructed the plaintiff in the enjoyment of any of his rights. How can the bill then be maintained against him? What greater reason is there for it, than to have brought the bill against Gardiner, had he continued the owner?

The opinion of the Court was prepared by

SHEPLEY J. — The plaintiff, in the month of July, 1840,

filed his bill against John Butler to obtain possession of the improvements, or compensation for them, made on a lot of land and conveyed to him by Butler. The answer and a general replication were filed, and testimony was taken. By an amendment subsequently made, John Butler, Jr. and Jairus Butler, sons of the former defendant, were made parties; and they have filed their answers, and additional testimony has been taken. John Butler, Sen., has since died, on the 12th of April, 1842.

It may be considered as admitted, or proved, that some time prior to the year 1816, one Dudley Watson had ·been in possession of lot No. 79, in the town of Mount Vernon, and claimed to be the owner of the improvements made on it. That, during that year, Butler, Sen. obtained from the plaintiff promissory notes payable to Watson for three hundred dollars to purchase those improvements; and made his own notes to the plaintiff for the like sum; and entered into possession of that lot of land. On the tenth day of August, 1818, these parties agreed, that there remained of these last notes then unpaid the sum of $229,68; and to secure the payment of it in two years from the last of September then next, Butler conveyed the improvements to the plaintiff by a deed of quitclaim, and received his notes, which were surrendered to him as thereby paid. A written agreement, then made between the parties, and the deed were lodged with Samuel Thing to remain until the last of September, 1820, when they were to be delivered to Butler, if he paid the amount due by that time, and if not, they were to be delivered to the plaintiff. The money was not paid, and these papers were delivered to the plaintiff. On the 28th day of February, 1820, and before the time for payment had expired, Butler purchased from Robert H. Gardiner and received from him a conveyance of the lot of land in fee; and at the same time re-conveyed the same to Mr. Gardiner in mortgage to secure the purchase money. Butler continued in possession of the lot until his decease. He neglected to pay Mr. Gardiner, who made an entry to foreclose the mortgage on the sixth day of April, 1822. On

the fourth day of November, 1825, he consented however, and did, at Butler's request, and it would seem for his benefit, convey the same to Noah Greely, Jr. who on the third day of August, 1837, conveyed the same to Butler.

When the plaintiff, on the first day of October, 1820, was entitled to take possession of the improvements conveyed to him, Butler was in possession under a title from the owner and could resist and prevent his entry. If he would have voluntarily yielded the possession to the plaintiff, when in possession, the plaintiff might have protected his interests against the title derived from the owner. And Butler in his answer says, that the plaintiff called on him with the deed and agreement in October, November, or December, 1820, and that he offered to let him have exclusive possession of the improved part of the lot, and that the plaintiff refused, unless he would give him up the deed from Mr. Gardiner. And that he never refused to give up to the plaintiff the possession and improvements before the filing of the bill. He does not profess to have offered to relinquish possession of the whole lot to the plaintiff, but only what he considered the improved part of it. And this part of the case is explained by the testimony. Ithiel Gordon in his testimony states, that Butler informed him, that he had told the plaintiff, " he might go on and go to work, if he dared to ; and show his title, if it was better than his ;" and that, " Chapman had got his fingers into a trap, and he might get them out if he could." It is contended in the defence, that the plaintiff had an adequate remedy at law ; that he might, in a real action, have recovered possession of the improvements ; or he might, in a personal action, have recovered the value of them under the provisions of the statute ; or have recovered damages in an action upon the written agreement. And that having neglected for so long a time to avail himself of these remedies the statutes of limitation are a bar to the present suit. When the plaintiff on the first day of October, 1820, became entitled to take possession of the improvements conveyed to him, Butler was in possession under a title from the proprietor, and could successfully resist and prevent his

entry; and by pleading and proving that title, could have defeated any action founded merely on a possessory title and brought by one, who had never been in the actual possession of the premises. The same difficulty has continued to exist. The statute of 1821, c. 62, § 5, provides only for the case of one, who is entitled to the improvements, and upon whom while in possession an entry is made, and that possession is withholden from him. The plaintiff could not make out a case within its provisions. He had never been in the actual possession, and no entry had been made upon him. The agreement of the tenth of August, 1818, says, " and the said Butler is to improve the said farm for the above space, and if the money is not paid, he agrees on his part to quietly leave the possession, and put the said Chapman in possession of the same."

In case of refusal the plaintiff might have maintained an action on this clause of the agreement, and have recovered damages for a breach of it. But his remedy can hardly be considered as adequate or perfect, when he could not by it have recovered the improvements, which had been conveyed to him; and might have recovered damages only for excluding him from the possession for the term of time before the action was brought. A Court of equity will give full effect to the statutes of limitation as well as throw out stale demands and claims. But when it perceives, that the party complaining has equitable rights, and that the remedy at law might have proved to be insufficient; that the answer admits, that they have never been relinquished or compensation made for them, and that they still exist, and alleges that no resistance has been made to the enjoyment of them up to the time of filing the answer; it will not refuse to give relief in a case proper for it, although the claim may have been outstanding for a long time. And no suit at law or in equity could have been maintained for the recovery of the improvements, until the superior title in other persons had been extinguished by the conveyance of Greely to Butler in the year 1837. And although Butler might legally purchase in the title, yet when he made use of it to defeat the

effect of his own prior conveyance of the improvements, he did so in fraud of the rights of the plaintiff, and it would have been but just to prevent his making such use of that title.

The surviving defendants allege, that they have purchased the estate *bona fide* and for a valuable consideration, and assert their right to hold it exempt from any equitable claims, which the plaintiff might have had upon it before such purchase. There may be reason for doubt, whether John Butler, Jr. is fairly entitled to be considered as an innocent purchaser for value. But as it is quite certain, that Jairus cannot be so considered, it is not necessary to decide upon the rights of John. The conveyance to Jairus appears to have been made and received with a knowledge of the plaintiff's claim, and in fraud of it, and without a valuable consideration paid. And he may be considered as designing to aid his father in preventing the plaintiff from obtaining possession of the improvements, or any compensation for them. And he may with propriety be made a party to such a decree as would have been appropriate, if the father had survived and retained the title. The more appropriate decree, according to the course of equity proceedings, would then seem to have been to have enjoined him from setting up the title since acquired against the rights of the plaintiff for any other purpose, than to enable him to receive the benefit of it subject to the improvements. And thus have placed the parties in a condition to adjust their rights according to the provisions of the statute, when a suit is brought by the owner against one in possession, who is entitled to his improvements. But such a decree must be productive of new and further litigation. Although the plaintiff, not having been in possession, does not come within the provisions of the statute authorizing one, who has been deprived of the possession by the owner, to maintain an action against him to recover for the value of his improvements in money, yet he is equitably entitled to a like redress. And Jairus may be considered as taking and holding the title fraudulently, and to prevent the plaintiff from obtaining possession of the improvements, and therefore as responsible for their value. And to

prevent further litigation, and in analogy to the statute provision, he may be required to make such compensation, if the testimony already taken will enable the Court to come to a satisfactory conclusion. The farm is found to be of about the value of $850, and that part of it conveyed to Jairus of the value of $450 or $500. Mr. Gardiner states, that he contracted to sell the fee for $480, but afterwards conveyed it for $400, that sum being less in his judgment, than the value of the land in a state of nature. From this and the other testimony in the case, the present value of the improvements cannot vary much from $400. These have been made partly by the father and sons since the conveyance to the plaintiff, and they have during that time received the income derived from the former improvements, and this may be considered as paying them for the improvements since made. The plaintiff, upon these principles of adjustment, will be entitled to recover the sum of four hundred dollars as the value of the improvements from Jairus Butler, with costs since he was made a party to the suit. The bill as to John Butler, Jr. is to be dismissed without costs. And a decree is to be made accordingly.