# WHEELING.

HEISKELL v. POWELL *et al.*

Submitted September 10, 1883—Decided March 29, 1884.

1. Where P. enters into an executory contract for the purchase of land, and at the time or afterwards, before the title is conveyed to him, or any part of the purchase-money is paid, by P.'s agreement, H. for F. W. H. pays one third of the purchase-money, and P. & H. pay the residue, and the legal title is subsequently conveyed to P., such payment by H. for F. W. H. creates a resulting trust, in favor of said F. W. H. and such conveyance of the legal title to P. makes him trustee for F. W. H. as to one third of said land. (p. 721.)

2. When the relation of trustee, and *cestui que trust* is once established, no subsequent dealing with the trust-property by the trustee can relieve the property of the trust as between the trustee and *cestui que trust*. (p. 723.)

23  717
35  165
23  717
37  519
23  717
42  231
23  717
43  372
43  753
23  717
47   68
23  717
52  322
23  717
56  645
57  483
23  717
58  128
58  130
23  717
62  608

3. The bar of the statute of limitations will not be applied in equity to the enforcement of a claim, of which equity alone has cognizance.  (p. 723.)

JOHNSON, PRESIDENT, furnishes the following statement of the case:

In July, 1880, F. W. Heiskell instituted a suit in equity in the circuit court of Hampshire county, against J. H. Powell and J. C. Heiskell. The bill was filed at October rules, 1880. The bill alleges that plaintiff and Powell made a verbal arrangement to buy two certain tracts of land in said county of a special commissioner, who had been appointed by the court; that it was agreed that they were to have each an equal interest in the same, and that Powell was to be represented as the purchaser, and the deed was to be held by him alone for their mutual benefit; that said purchase was made with a view to and for the purpose of a re-sale, and the deed was made to Powell as a matter of convenience and in accordance with their mutual agreement; that the purchase was made, and the commissioner made the deed to Powell; that Powell very soon after the purchase contracted to sell the said tracts of land to J. B. Hoyt & Co., and on March 14, 1871, conveyed them to said Hoyt & Co.; that subsequent to the contract of sale to Hoyt & Co. it was discovered that a Mrs. Peyton had the title to a moiety of said land, and that Hoyt & Co. agreed to pay an additional sum of five hundred dollars for the said title, which sum was by them paid to said Powell for that purpose; that J. C. Heiskell having become the owner of said moiety it was agreed by Powell that said Heiskell should become an equal owner of said lands with the plaintiff and said Powell, and should have his equal share of the profits arising from the sale to Hoyt & Co., in which arrangement the plaintiff acquiesced, and the purchase-money agreed to be paid to the special commissioner was paid out of the proceeds of the sale to Hoyt & Co.; and after paying the same and all other expenses a large sum was left as profits of the transactions to be divided between the plaintiff, said J. C. Heiskell, and the said Powell; that in the year 187– the said Powell and Jno. C. Heiskell had a settlement of said matters between themselves, in which J. C.

Heiskell received between five hundred dollars and six hundred dollars as his one third of the profits of said business; that plaintiff was not a party to said settlement and did not know that such a settlement had been made, until a long time after it was so made, and is in no wise bound thereby; that plaintiff has received none of the profits arising out of said sale, and claims, one third of the said profits with interest thereon; that Powell denies that plaintiff had any interest in said land, and refuses to make a settlement with him.

Plaintiff further alleges that under the agreement, Powell held the legal title to the land as trustee for himself, John C. Heiskell and the plaintiff, and that after the sale he held the money in trust for the benefit of the said parties, and in refusing to pay the plaintiff his share thereof has violated his trust; and the plaintiff prays for proper relief against the said Powell as such trustee. He also prays, that the defendants be required in their answers to disclose fully the amounts received by them and each of them, and the times when received, the expenses paid by them, and the net amount of the profits of the said land, that proper settlements be made, and the amount due to the plaintiff be decreed to be paid him; and for general relief.

The plaintiff filed an amended bill, in which he alleged, that in order to complete the purchase according to the agreement, he and said Powell employed John C. Heiskell to make the purchase for them in the name of Powell alone, and authorized him to do all for them that was necessary, in order to speedily and certainly secure for them the said lands. That in pursuance of said authority and instructions the said Heiskell as agent for the plaintiff and said Powell made the said purchase and paid to the commissioner two hundred and forty-eight dollars and thirty cents of the purchase-money, which was paid by said Heiskell for the said plaintiff and said Powell; and that soon afterwards said Powell paid for himself and the plaintiff one hundred dollars, the residue of the purchase-money; that it was *before* the sale to Hoyt & Co. that John C. Heiskell became entitled to a one third interest, and this was before the defect in the title was discovered; that the allegations of the original bill are incorrect as to these matters; that the said outstanding title

was purchased at the request of and for the benefit of the purchasers Hoyt & Co., and after the sale to them, &c.

John C. Heiskell answers the bill, and in his answer he insists, that no decree should be rendered against him, as he only got his one third interest, to which he was entitled, after he had had a settlement with said Powell.

James H. Powell answered the bill, and in his answer he denies, that said F. W. Heiskell paid any part of the purchase-money on said purchase, or that he had any interest whatever in said purchase. He says that he alone requested J. C. Heiskell to purchase for him these lands from the commissioner. He says he entered into a written obligation with the commissioner to pay him two hundred dollars on the confirmation of the sale and the residue in six, twelve and eighteen months; that no part of the purchase-money was paid at the time the obligation was executed, nor had any been paid prior to that time; that subsequently in consideration of services rendered in negotiating the purchase he agreed to give John C. Heiskell a third interest in said land, but he denies that plaintiff was ever consulted by John C. Heiskell or respondent in reference to the interest of J. C. Heiskell in said land; that *after* respondent's obligation was given to the commissioner, Heiskell settled with the commissioner for respondent alone, a portion of the purchase-money wholly or principally for taxes due for several years on said lands; that after the sale to Hoyt & Co. it was discovered, that the title to a moiety of the land was in Mrs. Peyton, and Hoyt & Co. refused to complete the purchase or take any part of the land, until the Peyton title could be obtained and conveyed to them; that the title was obtained by respondent and by him conveyed to Hoyt & Co.; that with this purchase plaintiff likewise had nothing whatever to do, nor was he consulted in any manner whatever in reference thereto.

Respondent further says the first intimation he had that plaintiff claimed any interest in the lands or in the proceeds of the sale thereof was shortly after the sale to Hoyt & Co., when plaintiff by his counsel called on respondent for a settlement of the matter, and respondent replied that he had no settlement to make with plaintiff, and denied that plaintiff had any interest therein in any manner whatever; that it

is now ten years or more since said demand was made, and respondent submits that even had there been such a purchase in trust as is alleged, it is now barred by the statute of limitations, which respondent pleads; and he further pleads and relies upon the statute of frauds as a full and complete defence to such a verbal agreement as is set up by plaintiff.

Depositions were taken, and on the 24th day of September, 1881, the cause was heard, and the court held, that from the evidence of the transaction there was a resulting trust in favor of F. W. Heiskell, and that Powell held the legal title to one third of said land in trust for said Heiskell; and that as Powell had sold said property to innocent purchasers, Heiskell was entitled to one third of the profits of said sale, after expenses were fixed, and as ascertained the amount from the evidence appears to be five hundred and four dollars and sixty-five cents, on the 14th day of March, 1872; and the court being of opinion, that the plaintiff's claim was not barred by the statute of limitations, and the plaintiff waiving a reference to a commissioner to ascertain the amount due him, and agreeing to accept the amount aforesaid, that being the same that the defendant had agreed to pay John C. Heiskell, at the settlement made with him, entered a personal decree in favor of plaintiff against said Powell for seven hundred and ninety-three dollars and five cents principal and interest together with the costs of the suit.

From this decree Powell appealed.

*Sprigg & Dailey* and *H. B. Gilkerson* for appellant.

*Samuel F. Flournoy, Dailey & Dailey* and *Robert White* for appellee.

JOHNSON, PRESIDENT:

The first question presented is: Do the pleadings and proof show that there was a resulting trust in favor of F. W. Heiskell, growing out of the purchase and conveyance of said land? Where one enters into an executory contract for the purchase of land, and afterwards, but before the title is conveyed to him, or any part of the purchase-money is paid, he agrees with another, that if he will pay one half the pur-

chase-money, he shall be an equal owner in the land, and the other consents, and therefore the two pay the purchase-money, each one half thereof, and the legal title is conveyed to one of them, such payment by the stranger creates a resulting trust in his favor, and the conveyance of the legal title to the other makes him trustee for one half the said land. Trusts of this kind are excepted from the statute of frauds, and it is competent for the real owner to prove his payment of the purchase-money by parol evidence, even though it be otherwise expressed in the deed. (*Murray* v. *Sell, supra.*) And, if a friend, should pay the money for another before the conveyance, and the residue of the purchase-money was paid by a third party, to whom the legal title was conveyed, he would hold the title to one half the land as trustee for the party, for whom his friend had paid the money. In this cause, if it is true that John C. Heiskell at the instance of F. W. Heiskell and Powell advanced two thirds of the purchase money for said F. W. Heiskell and Powell, or if he advanced one third of the purchase-money for F. W. Heiskell, and afterwards the legal title was conveyed to Powell, a trust resulted in favor of F. W. Heiskell, and Powell held the title to one third of said land in trust for said F. W. Heiskell.

The bill alleges that such was the fact. The answer denies it. The deposition of F. W. Heiskell declares it is true. The deposition of John C. Heiskell shows the same thing. Moses Sargent in his deposition says, that Powell told him in speaking about the purchase of the two tracts of land that "he and Frank Heiskell had bought it or were about to buy it, and he said he would like to get Mr. Heiskell out if he could." Alexander Monroe, says, "I was going down I think to survey these lands with Mr. Powell, I then talked to Mr. Powell and mentioned to him something about the purchase; I was not in a very good-natured mood at the time; * * * I suggested to him that I had as much reason for being a partner as Frank Heiskell, partner in the above mentioned land, these two tracts. My recollection is that Mr. Powell did not make any answer to this, and did not say whether F. W. Heiskell was a partner or not."

Ques.—What answer, if any, did you give to Powell, why

there was as much reason you should be a partner, as Heiskell ?

Ans.—My recollection is, I remarked to Mr. Powell that I had bargained with Green for the one thousand and eight acres and took him, Mr. Powell, in as a partner in that, and that I had hunted up the other lands and had done a good deal more towards the purchase than Frank Heiskell had.

The deposition of no one else was taken in the case, except J. H. Powell; and he denies that any money was paid for F. W. Heiskell, or that he had any interest whatever in the land. It is proved to our entire satisfaction, that John C. Heiskell did pay at least one third of the purchase-money for F. W. Heiskell.

But it is insisted, that Powell had to quiet the title, or buy the title to one moiety of the land. It is a well established rule, that when the relation of trustee and *cestui que trust* is once established, no subsequent dealing with the trust-property by the trustee can relieve it of the trust as between him and his *cestui que trust*. (*Vangilder* v. *Hoffman*, 22 W. Va. 1; *Murray* v. *Sell*, *supra*.) It is clear that this title was bought in after the sale to Hoyt & Co., and, I think, equally clear that it was bought with money furnished by Hoyt & Co.

We have seen that this cause is not within the statute of frauds. Is it affected by the statute of limitations? As to matters of equitable cognizance merely the statute does not apply. The statute is not binding on courts of chancery in cases of exclusively equitable cognizance. But the court often refuses to interfere where there have not been gross laches or a long and unreasonable acquiescence in the assertion of adverse claims. (*Morse* v. *Oliver*, 14 N. J. Eq. 259; *Attorney General* v. *Purmort*, 5 Paige 620; *Milnes* v. *Conley*, 4 Price 103.) It has been held in cases where the jurisdiction of equity is concurrent with courts of law, that is, where a right is sought to be enforced in equity, for which the party has a remedy at law, that it would operate as a virtual repeal of the statute, if parties by a change of forum could evade its effect. (*Bank of the U. S.* v. *Daniel*, 12 Pet. 56.) But this cannot be said to be the case, where the rights sought to be enforced are merely matters of equitable jurisdiction, because the evil results likely to ensue in the former case cannot

ensue in this, and also because this class of claims cannot be said to be within the spirit or intent of these acts, unless expressly embraced therein; and in such cases the rights of parties are enforced without reference to the statute, unless from lapse of time and neglect in seeking their enforcement they have become stale. (Wood on Limitations, 119; *Lawrence* v. *Trustees*, 2 Den. 577; *Rocknell* v. *Servant*, 54 Ill. 251.)

Where a court of equity perceives that the plaintiff has equitable rights, and that a court of law might have proved insufficient to protect them, it will not in a proper case refuse relief, even though the claim has been long-standing; and especially do courts of equity make an exception in the case of direct technical trusts and fraudulent concealment of the cause of action. (Wood on Limitations 116; *Chapman* v. *Butler*, 22 Me. 191; *McKnight* v. *Taylor*, 1 How. U. S. 161; *Getchell* v. *Jewett*, 4 Me. 350; *McLain* v. *Ferrell*, 1 Swan 48.) Trusts are peculiarly within the cognizance of courts of equity.

The demand here is so purely equitable, that it is not perceived how a court of law could have jurisdiction. It certainly could have afforded but a very insufficient remedy, if any at all. The defendant denies the trust to the last; he did not settle with the plaintiff after he had sold the trust-property, and refused to recognize the plaintiff as entitled to share in the proceeds. The plaintiff was therefore driven into a court of equity to have the trust declared. We think it clear, that the statute of limitations did not apply and that the claim of the plaintiff was not a stale demand.

There is no error in the decree of the circuit court, and it is therefore affirmed.

AFFIRMED.