# CHARLESTON

## SWIGER v. SWIGER.

Submitted March 8, 1905.    Decided October 22, 1905.

1. APPEAL.—*Dismissal—Renewal.*

When an appeal and *supersedeas* have been dismissed under rule III, of the Supreme Court, a new petition reciting the fact of the former petition and allowance and dismissal and referring to the assignments of error contained in the former petition and making them a part of the new petition is sufficient upon which to allow an appeal, although such new petition prays "That said order of dismissal may be set aside, that said appeal and *supersedeas* heretofore allowed may be renewed." (p. 127).

2. DEED—*Husband and Wife.*

Where a husband conveys land directly to his wife, not in fraud of his creditors, she takes only the equitable title, while the legal title remains vested in the grantor in trust for his wife, the grantee. (p. 128).

3. DEED—*Husband and Wife.*

In such case the husband cannot convey the legal title to another or encumber the same by deed of trust, or otherwise. (p. 130).

4. DEED—*Certificate of Acknowledgment—Proof.*

The certificate of the acknowledgment of a deed imports verity, and cannot be overcome, except by clear and satisfactory proof. The evidence of the grantor denying the execution of the deed and the opinion of experts that the signature thereto is not that of the grantor, are not sufficient. (p. 134).

Appeal from Circuit Court, Harrison County.

Bill by Nancy Swiger against Benoni A. Swiger and others. Decree for plaintiff and defendant Benoni A. Swiger appeals.

*Affirmed.*

J. V. BLAIR and DAVIS & DAVIS, for appellant.
M. R. CROUSE and G. W. FARR, for appellee.

MCWHORTER, JUDGE :

Daniel Wright died siezed of eighty-nine and one-half acres of land on Crane's Nest Run in Tyler county, which descended to his eight children subject to the dower of his widow, Prudence Wright. Nancy Wright married Benoni A. Swiger in 1857; after the death of Daniel, Nancy and her husband instituted a suit in the circuit court of Tyler county

for partition of the land among the heirs and to assign the dower of Prudence Wright therein. In the partition there was assigned to Nancy, lot No. 8, containing nine and one-half acres, of which two acres and a fraction were subject to the dower set apart to her mother Prudence Wright. Benoni purchased the interests of all the heirs except that of Nancy, his wife. On the 24th of September, 1888, B. A. Swiger conveyed to his wife, Nancy Swiger, in consideration of $1,000, the said tract of eighty-nine and one-half acres subject to the dower of Mrs. Wright in six acres of said tract. On the first day of December, 1890, said Nancy Swiger by deed of that date in consideration of $1, granted, bargained, sold and released to the said B. A. Swiger all her right, title and interest in said eighty-nine and one-half acres of land, except the nine and one-half acres set apart to her by the commissioners of partition and decreed thereon; and also on the same day the said parties executed the following writing:

"This indenture made this the first day of December, one thousand eight hundred and ninety between B. A. Swiger of the first part and Nancy Swiger his wife of the second part.

"Whereas, divers disputes and unhappy differences have arisen between the party of the first part and his wife, for which reason they have consented and agreed to live separate and apart from each other during their natural life.

"Now, therefore, this indenture, witnesseth, that the said party of the first part in consideration of the premises does hereby covenant promise and agree to and with his said wife, at all times hereafter to live separate and apart from him and that she shall and will allow and permit her to reside and be in such and such place or places and in such family or families and with such relations, friends and other persons and to follow and carry on such trade or business as she may from time to time choose or think fit for living separate and apart from him or compel her to live with him nor sue, molest disturb, or trouble any other person whomsoever for receiving entertaining, or harboring her, and that he will not without her consent visit her or knowingly enter any house or places where she shall dwell, reside or be or send or cause to be sent any letter or message to her nor shall or will at any time hereafter claim or demand any of her money, jewels, plate, clothing, household goods, furniture or stock in trade

which she now has in her power, custody or possession
or which she shall or may at any time hereafter have,
buy or procure or which shall be devised or given to
her or that she may otherwise acquire and that she shall and
may enjoy and absolutely dispose of the same as if
she was a *femme sole*, and unmarried, and further the said
party of the first part further agrees to deliver his wife one
spotted cow and five pictures small and enlarged pictures in
frame and bupboard ware, all she desire.

"The said Nancy Swiger is to have full control of her
daughter, Mary Margaret Swiger.

"In witness whereof the said parties have hereunto affixed
their hands and seals this first day of December, 1890.

"B. A. SWIGER    [SEAL].
"NANCY SWIGER    [SEAL]."

Which was duly acknowledged on the day of its date and
recorded in the clerk's office of the county court of Tyler
county, on the 22d day of December, 1890. On the 10th of
May, 1894, the said Benoni A. Swiger made to the South
Penn Oil Company an oil and gas lease on said tract of land,
calling it ninety acres, more or less, and by deed of August 10,
1898, said B. A. Swiger conveyed to said South Penn Oil
Company the one-half of the one-eighth royalty reserved to
the lessor, Swiger, in said lease of May 10, 1894. On the
14th day of November, 1900, as stated in the petition for
appeal, as well as in the appellant's brief Nancy Swiger sued
out of the clerk's office of the circuit court of Tyler county,
her subpoena in chancery and at the January rules, 1901,
filed her bill of complaint therein against Benoni A. Swiger,
Nathan Knight, Emmanuel Elder, the South Penn Oil Com-
pany, a corporation, the Eureka Pipe Line Co., a corpora-
tion, alleging her marriage to the said B. A. Swiger, and
that the said eighty-nine and one-half acres of which her
father Daniel Wright died seized became the property of her-
self and her husband, he having purchased the interests of
the other heirs and alleging the conveyance to plaintiff by
defendant B. A. Swiger of all his interest in said tract of
eighty-nine and one-half acres of land by said deed of Sep-
tember 24, 1888, under which she was placed in possession
of said land by her husband, whereby she became the owner
in fee simple of the entire tract, subject to the dower of said

Prudence Wright; that the plaintiff lived with her said husband on said land exercising the rights of ownership thereof until her husband seemed to be desirous of getting possession of said property and the title thereto, began to insist upon plaintiff's reconveying said land to him or to one of his sons, which plaintiff declined to do, which state of affairs continued for some time and as it continued her husband became more violent and abusive towards her until by threats of personal violence and by personal violence to her, forced her to leave home, which was about the summer of 1890, when he took forceable and unlawful possession of said tract of land in spite of the entreaties of plaintiff to him to regard her rights in the premises; that after forcing her to leave her home he continued his threats of violence and abuse toward plaintiff until he coerced her by intimidation and through fear of him into executing the paper writing dated the first day of December, 1890, purporting to be a deed for said tract of land, except the nine acres; that plaintiff was about sixty-five years of age, frail and delicate, almost blind and illiterate and did not know at the time she executed said deed. of December 1, 1890, what her rights were in the premises and being afraid of him was afraid to inquire, and that not until quite recently, within two years was she apprised of what her rights in the premises were ; that she brought the ejectment suit and this suit at the risk of her life because her husband was a smart, scheming and unscrupulous man and regarded as a dangerous man when angry at a person or seeking to accomplish his ends; that he was a dangerous and quarrelsome man and had been engaged in law-suits more or less, all of his life, and also a strong and able bodied man ; that shortly after he forced her to execute the deed of December 1, 1890, he gave an oil and gas lease on said land, receiving a large sum of money as a bonus and had received rentals, etc., in all aggregating one thousand dollars or more; that defendant sold a large amount of trees and lumber off of said land, which trees and lumber were worth, at least one thousand dollars; that he afterwards sold and conveyed to the South Penn Oil Company one-half of the one-eighth royalty oil reserved by him in the lease, for the sum of five hundred dollars; that he conveyed by deed to Nathan Knight six acres of said tract of land; alleging that said deed from plaintiff to

defendant of December 1, 1890, and defendant's lease to the South Penn Oil Company and his deed conveying one-half of the royalty oil reserved in said lease, and his deed to Nathan Knight for the six acres, part of said tract of land, are clouds upon the title of plaintiff, which she was entitled to have removed by a court of equity, and accordingly prayed therefor and for general relief.

The defendant, Benoni A. Swiger, filed his demurrer and also his answer denying the allegations of the bill alleging his mistreatment of the plaintiff and the threats against her and averring that the deed dated December 1, 1890, from his wife to himself was a free act on her part, and filed with his answer, as an exhibit, another writing bearing date the first day of December, 1890, styled an "indenture" executed by himself and the plaintiff purporting to be an article of compromise, which paper is copied in the early part of this opinion. Defendant denied that he made, signed, acknowledged, executed and delivered the deed of September 24, 1888, and averred that the same was a forgery "Procured and caused to be made and falsely certified, through and by the acts, solicitations, connivances and deceptions of the said Nancy Swiger and Jacob Swiger, son of plaintiff and defendant who confederated and conspired together as respondent is informed, and by false representations, personations and otherwise induced and deceitfully caused the notary, Amaziah Ashburn to write said deed to which the said Jacob, as respondent is informed, wrote, signed and forged the name of 'B. A. Swiger' after which the said Nancy and Jacob wrongfully and deceitfully procured the false and untrue certificate of said notary thereto with intent and purpose on the part of said Nancy and son Jacob to cheat and defraud this respondent; that the making of said deed was kept secret from this respondent for a long time; that it was not, in fact, admitted to record until, to-wit: the 22d day of January, 1889; that immediately upon receiving some information that such writing was in existence respondent began to make inquiry and investigation and to his surprise and astonishment he ascertained that such writing had been made as hereinbefore stated;" that he went to plaintiff and she denied that any deed had been made; he then went to the county clerk's office and found it on record, after which he saw plaintiff and

so informed her, when she admitted that such writing was made in his absence; that she and her son had caused it to be made, only intending to use it in the event that anything should happen respondent, should he die or not return home; respondent denied that any of the bonus, rentals or other moneys that come to his hands by reason of or under or by virtue of said oil lease and gas lease, said royalty grant, proceeds on oil, gas, timber or otherwise belonged to plaintiff, and denied that an accounting therefor should be ordered, and prayed that said land, eighty-nine and one-half acres, except said lot number 8, and said dower interest might be held and decreed to be the property of respondent, free and acquit from the claim of plaintiff; that said lease and royalty grant and the said Knight deed might be held firm and stable; that said writing purporting to be a deed dated the 24th day of September, 1888, from respondent to plaintiff might be decreed null and void and set aside and that plaintiff might be forever enjoined and restrained from using said writing or claiming title thereunder, and for general relief.

The plaintiff filed her demurrer to the affirmative matter set up in said answer and cross bill and her answer, and special replication thereto denying the allegations of said answer and cross bill setting up new matter.

The South Penn Oil Company also filed its answer. Many depositions were taken and filed on behalf of the plaintiff as well as of the defendant, Benoni A. Swiger, and the cause was finally heard on the 2nd day of October, 1903, when the plaintiff replied generally to the answer and cross bill of the defendant B. A. Swiger, except as to the affirmative matter to which she had filed a special replication, which the defendant moved to strike from the record, which motion the court overruled. The court found that the plaintiff and defendant B. A. Swiger were husband and wife and had never been divorced; that B. A. Swiger had made, executed and delivered to plaintiff, Nancy Swiger, the deed of September 24, 1888; and that the same was not forged as charged in defendant's answer and cross bill, and decreed that defendant B. A. Swiger was not entitled to the relief prayed for in his answer and cross bill; that since this suit was brought the said Nancy Swiger, the South Penn Oil Company and Nathan Knight had separately compromised the matters and differ-

ences between them in regard to their respective interests and purchases of said tract of land, and the oil and gas therein, and that B. A. Swiger was then and had been in possession of said tract of land except the part by him conveyed to Knight embraced in the litigation in this cause, ever since the first of December, 1890, enjoying the rents, issues and profits thereof, collecting bonuses made thereon and selling timber thereon, and that said tract of land had produced a large amount of oil and that a part thereof was by the South Penn Oil Company turned over to the defendant, B. A. Swiger, before the institution of this suit and shortly thereafter, and further decreed that the plaintiff Nancy Swiger was entitled to the relief prayed for in her bill and that she did not by deed dated December 1, 1890, pass to said B. A. Swiger her interest or right in and to the tract of land and property in controversy in this suit, and the court was further of opinion that said deed of December 1, 1890, was a cloud upon Nancy Swiger's right, title and interest and decreed that the same be set aside, annulled and vacated and held to be void, and that the said Nancy Swiger was the owner in equity of said tract of land and the rents, issues and profits thereof be subject to her compromise with the South Penn Oil Company and Nathan Knight and their respective interests which had been theretofore compromised, and subject to the dower interest of Prudence Wright in about four acres, part of the seven acres and one hundred and eighteen poles now owned by the defendant B. A. Swiger, and upon which, well number one, drilled upon said farm was located, and it was further decreed that the South Penn Oil Company or the Eureka Pipe Line Company turn over to M. R. Crouse and G. W. Farr, attorneys for Nancy Swiger, all the one-sixteenth part of the oil produced by the South Penn Oil Company since the 10th day of May, 1901, and yet to be produced from the tract of eighty-nine and two-ninths acres of land which had been claimed by Benoni A. Swiger and which had been held since the 10th day of May, 1901, the court being of opinion that Benoni A. Swiger did not own said oil but that the same belonged to said Nancy Swiger, except the said oil company or pipe line company should turn over to Lathrop R. Charter, Jr., who was appointed as special receiver to receive the same, one sixteenth of all the oil produced since the 10th day of May,

1901, and yet to be produced during the life of Prudence Wright in well number one, drilled within the dower interest of the said Prudence Wright and now owned by the defendant B. A. Swiger, and authorizing the special receiver to sell the production from well number one and loan the proceeds thereof and pay the interest from such loans to the defendant B. A. Swiger or his assigns, during the lifetime of Prudence Wright and upon the death of said Prudence, after the payment of legal charges and costs connected with the receivership the principal derived from the sale of the production from said well number one to be turned over to the attorneys for Nancy Swiger, and on motion of plaintiff the cause was referred to a commissioner to ascertain and report the share of oil due Nancy Swiger under the tract of land or already produced therefrom, by whom held and the value thereof, if the same had not already been turned over as before provided in said decree by the said oil company or pipe line company or both of them and said commissioner was also directed to ascertain and report the rental value of the surface of said tract of eighty-nine and two-ninths acres of land per year from December 1, 1890, less a part thereof already conveyed to Nathan Knight and who was liable for the rent thereof, and also to ascertain and report the amount of rentals, bonus money and other money received by the defendant B. A. Swiger from the tract of land in controversy since December 1, 1890, and to ascertain and report the amount and value of the oil received by the said B. A. Swiger from said tract of land, and to state and settle the accounts between B. A. Swiger and Nancy Swiger, and also directed to credit the said B. A. Swiger with any permanent improvement and the value thereof put upon said land since the first day of December, 1890, and also credit him with the taxes paid thereon, in so far as the same might be legally shown to exist, before the commissioner. From this decree defendant B. A. Swiger appealed.

Appellee contends that there is no appeal pending; that on the 8th of September, 1904, an order was entered dismissing the appeal granted January 1, 1904, under Rule Three of the Supreme Court for failure to print the record. On the said 8th day of September, 1904, a supplemental petition was filed

making the original petition and assignment of errors and transcript of the record of the case a part of such supplemental petition and prayed "That said order of dismissal may be set aside; that said appeal and *supersedeas* heretofore allowed may be reinstated and said cause matured and heard by Your Honors." It is contended by appellee's counsel that the order granting the second appeal makes no reference to the order of dismissal nor does it reinstate the cause; that it does not renew the appeal and *supersedeas*; that the order entered is responsive to the prayer of the original petition but not responsive to the prayer for appeal and *supersedeas* to be renewed. The fourth section of rule three of the Supreme Court provides "An appeal or writ of error dismissed in accordance with this rule may be renewed upon presenting a new petition reciting the fact of the former petition and allowance and dismissal and referring to the assignments of error contained in the former petition." And the new petition praying that the order of dismissal might be set aside and that said appeal and *supersedeas* heretofore allowed may be renewed complies with the rule in that it refers to the former petition and assignments of error and the transcript of the record and made them a part of said petition and the new petition being presented within two years from the date of the decree appealed from, the appeal was properly allowed.

Appellant says that the court erred in overruling his demurrer to the bill, first because the bill's own allegation shows that the plaintiff had abandoned her husband and the land in the summer of 1890, and her suit was not brought until December 14, 1900, and the bill filed at January rules, 1901, more than ten years having elapsed, her suit was barred. The subpoena in chancery was not copied into the record but the petition for appeal says "The summons was issued by the clerk of the circuit court of Tyler county, November 14, 1900, and the bill filed at rules held for said court on the first Monday in January, 1901. Section 5, chapter 124, Code, provides that "The process to commence a suit shall be a writ commanding the officer to whom it is directed to summon the defendant to answer the bill or action." It has been frequently held by this Court that the date of the issuance of the writ is the commencement of the suit. See *United States*

*Blow Pipe Co.* v. *Spencer*, 46 W. Va. 590; *Lambert* v. *Manufacturing Co.*, 42 W. Va. 813; *Abney* v. *Lumber Co.*, 45 W. Va. 446. The allegations of the bill do not show that the plaintiff abandoned her husband and the land in the summer of 1890, but she alleges that after the execution of said deed of the first day of December, 1890, defendant drove her off the land and she was forced to move on to the tract of land belonging to her mother in Doddridge county, and the proof is not certain as to when she actually left the place, and dates are given from about the 15th of December until March, 1901. The suit is not for a divorce nor for separation, nor does plaintiff pray for the possession of the land, to the exclusion of defendant, but that her property shall be restored to her possession and control and the deed made by her of the first day of December, 1890, be set aside and annulled and held as void. There can be in this case no limitations in favor of B. A. Swiger by adverse possession or otherwise, because his possession of the wife's land cannot be adverse to her interests and the doctrine laid down in *Randolph* v. *Casey*, 43 W. Va. 289, does not apply. That was not a contest between husband and wife, but between a married woman and an innocent purchaser for value, from the purchaser from plaintiff, the married woman, when the husband had joined in the conveyance to the purchaser and the purchaser had conveyed to Casey, who had held the possession thirteen years under color of title before Mrs. Randolph brought her suit. After the deed of September 24, 1888, from B. A. Swiger to Nancy Swiger, the possession by Swiger was that of trustee for his wife; his conveyance of September 24, 1888, being only a conveyance of the equitable title, the legal title still remaining in B. A. Swiger for her benefit. In *Heiskell* v. *Powell*, 23 W. Va. 717, (syl. pt. 2), it is held: "When the relation of trustee and *cestui que trust* is once established, no subsequent dealing with the trust-property by the trustee can relieve the property of the trust as between the trustee and the *cestui que trust*." And point 3: "The bar of the statute of limitations will not be applied in equity to the enforcement of a claim of which equity alone has cognizance." And in *Cramer* v. *McSwords*, 24 W. Va. 594, (syl. pt. 3), it is held: "In a suit in equity to enforce a purely equitable demand, the defence of the statute of limitations can have no application of itself or

by analogy to any limitation in courts of law. Such cases must be determined by courts of equity upon rules and principles of their own." And point 5, is as follows: "While ignorance of law will not prevent the operation of the statute of limitations, the rule is different in equity, a court of conscience; in such court moral as well as legal grounds may be considered, and a satisfactory moral excuse may be entertained, although it resulted from ignorance of law." See also *Berry* v. *Wiedman*, 40 W. Va. 36; *Manning* v. *Manning*, (79 N. C. 293) 28 Am. Rep. 324. *Righter* v. *Riley*, 42 W. Va. 633, (syl. pt. 1): "The claim of a wife against her husband is not barred by the statute of limitations during coverture, if at all, until twenty years from the original inception or written renewal thereof." It is insisted by appellant that the demurrer ought to have been sustained for want of parties; that B. Engle, trustee, and J. V. Blair, the beneficiary under deeds of trust executed by B. A. Swiger upon the property to secure certain debts of B. A. Swiger to said Blair should have been made parties to the bill. *Robinson* v. *Dix*, 18 W. Va., page 528, holds that "A demurrer to a bill for want of parties should properly name the necessary parties defendant who have been omitted so as to enable the plaintiff to amend his bill and call the attention of the court to this defect and if it does not the demurrant cannot complain that the demurrer is not sustained." The demurrer in the case at bar fails to mention want of proper parties. In *Thomas* v. *Wood*, 61 Ind. 132, it is held: "An objection to a complaint that there is a defect of parties should be taken by demurrer where such defect appears upon the face of the complaint * * * where such defect does not appear upon the face of the complaint the objection should be taken by answer * * * such objection if not so made in court below is thereby waived and cannot be raised for the first time in the supreme court of appeals." And in *Hutton* v. *Cuthbert*, 51 Mich. 229, it is held that: "A defendant to a bill in equity cannot object to the omission to implead parties whose names they themselves will not disclose." It is not made to appear by any pleadings in the cause that Engle and Blair were necessary parties in the cause, nor that such trust deeds were in existence, but copies of two deeds of trust executed on said property by B. A. Swiger, one dated October 29, 1891,

the other April 6, 1892, were filed as exhibits by the defendant with the deposition of Nathan Knight, taken and filed in the cause, which deeds of trust purport to secure on said property the indebtedness mentioned therein, due from B. A. Swiger, and it nowhere appears in the record that the indebtedness so secured or any part of it remains unpaid. Defendant was not competent to encumber said property by deeds of trust or otherwise, it being held in trust by him for Nancy Swiger. Section 1, chapter 66, Code; *Wormley* v. *Wormley*, 8 Wheat. (U. S.) 421; *Chaffee* v. *Oliver*, 3 Fed. Rep. 609; *Heiskell* v. *Powell, supra.; Cranmer* v. *McSwords, supra.; Seborn* v. *Beckwith*, 30 W. Va. 774; *Guernsey* v. *Lazear*, 51 W. Va. 328; *Mundy* v. *Vawter*, 3 Grat. 519; *Heth* v. *Railroad Co.*, 4 Grat. 482. From the time of the conveyance by said B. A. Swiger to Nancy Swiger, of September 24, 1888, the grantor became the trustee of Nancy, holding for her the legal title, which he could neither transfer nor encumber, and the said deed being of record was notice to Engle and Blair as well as all others that he held such title only as trustee, therefore the said deeds of trust were void. The deed of December 1, 1890, from Nancy to B. A. Swiger was no protection to them as the same was null and void; but it is contended by appellant that the said deed of December 1, 1890, is aided by the compromise deed of the same date, signed, sealed and acknowledged by both of them, when considered and construed together as is proper to be done, and cite 2 Pom. Eq. Jures. (2d Ed.) section 850; also *Korne* v. *Korne*, 30 W. Va. 1, where it is held : "Where a compromise of a doubtful right is fairly made between parties it is binding and cannot be affected by any subsequent investigation or result; and this is so whether it is a compromise of doubtful question of law or fact." See section 850, just cited, that such compromise "Will not be disturbed for any ordinary mistake either of law or fact in the absence of conduct otherwise inequitable, since their very object is to settle all such possible errors without judicial controversy." Such compromise to be effective must be fair and equitable. By the "terms of the deed of compromise" in case at bar the only consideration passing from B. A. Swiger to his wife Nancy, is "One spotted cow and five pictures, small and enlarged pictures in frame, and cupboard ware, all she desire."

By it he is relieved from all liability to assist or support the said Nancy Swiger and he agrees to live separate and apart from her, and in no wise to interfere with her business, or thereafter "Claim or demand any of her money, jewels, plate, clothing, household goods, furniture or stock in trade which she now has in her power custody or possession, which she shall or may at any time hereafter have, buy or procure or which shall be devised or given to her or that she may otherwise acquire, and that she shall and may enjoy and absolutely dispose of the same as if she was a *femme sole* and unmarried." It would seem that the principal consideration for the deed of compromise and the conveyance of the land of December 1, 1890, was the solemn agreement on the part of the vendee to live separate and a part from his wife during their natural lives; if the evidence of his treatment of her is to be believed, that might be construed to be a consideration or at least a benefit to her in case her property was restored to her; but can it be said that "One spotted cow and five cheap pictures" and some cupboard ware could be a sufficient consideration for the eighty acres of land conveyed by her to him? It does appear to me that this compromise is not fairly made and is in no sense equitable and just. The court is asked by the appellant to consider and construe together the deed of December 1, 1890, and the compromise deed of the same date. If there was any doubt about the deed of December 1, 1890, being inequitable and without consideration the compromise deed executed on the same day would dispel all such doubt and make it clear that some improper influence was brought to bear to bring about its execution. The compromise deed as far as appears upon its face is entirely independent of the other deed; makes no reference to it or the land in any respect but is simply an agreement to live separate and apart, not only relieving defendant from the support and care of his wife whom he had pledged himself solemnly to love, cherish and support, but casts upon the plaintiff, Nancy Swiger, the burden of the care and control of their daughter, Mary Margaret Swiger. In *Switzer* v. *Switzer*, 26 Grat. 574, it is held, (syl. pt. 2) : "A contract between a husband and wife in an agreement for a separation, cannot be sustained in any case in which it does not clearly appear, that in the negotiation which preceded the agreement,

as well as at the time of executing the same, the wife was in a position in which she could act and did act, not only with perfect freedom, but with a full knowledge and appreciation of all the circumstances of her situation, and of her individual and marital rights; and the contract in itself must be fair and just, wholly free from exception, and such as a court of equity might have imposed upon the parties in a case in which their persons and their property had properly fallen under its jurisdiction and control." See also *McKenzie* v. *Railroad Company*, 27 W. Va. 306–311. It cannot be said that this contract is fair and just, wholly free from exception and such as a court of equity would impose upon the parties in a suit between them. In *Cheuvront* v. *Cheuvront*, 54 W. Va. 171, (syl. pt. 3), it is held that : "In a suit brought by a wife against the husband to set aside and cancel a deed or contract between them for fraud in its procurement, by which the husband obtained an advantage over her, the burden of proof is on the husband to show that the wife was fully informed as to the effects of the transaction and also the utmost fairness thereof." The deed of December 1, 1890, conveying from plaintiff to defendant the land recites as the consideration therefor one dollar and there is almost no evidence of any other or further consideration—not even the "spotted cow and five pictures," are mentioned in that deed. The defendant in his own deposition does make a lame attempt at trumping up a show of consideration claiming the amount of $881 as passing to his wife as a consideration; but on cross examination he fails to make a statement of it at all satisfactory. The burden of proof is on B. A. Swiger to show that his dealings were fair, just and equitable and this he has failed to show. *Cheuvront* v. *Cheuvront, supra; Darlington's Appeal*, 86 Pa. St. 512. It is insisted by appellant that the court erred in sustaining the deed of September 24, 1888, from B. A. Swiger to Nancy Swiger, claiming that the proof is clear that the same was a forgery. There is a vast amount of testimony as to the genuineness of the signature to this deed and the evidence is very contradictory, scarcely a preponderance either the one way or the other as to the signature. It is useless to go into a discussion of the evidence taken in the cause. Four witnesses, including the plaintiff, swear positively that they saw the deed delivered

by defendant to plaintiff.    Defendant examined quite a num-
ber of witnesses, some of whom testify that they did not be-
lieve the signature to be that of B. A. Swiger, while others
say it looked like his, but they were not able to say whether
it was his or not.    On the other hand many others testified
that they believed it to be his genuine signature.    There
were very few who could be regarded as experts in the mat-
ter of hand-writing, some of whom were of opinion that it
was not the hand-writing of defendant, while others, equally
as well qualified as experts, were of the opinion that the
signature was genuine.    There are some circumstances which
tend largely to prove the genuineness of the deed.    It is not
denied that the notary public, Amaziah Ashburn certified the
acknowledgment.    In his answer defendant Swiger does not
charge that Ashburn fraudulently made the certificate, but
charges that plaintiff and her son Jacob Swiger conspiring
together had wrongfully and deceitfully procured the false
and untrue certificate of said notary to said deed "With
intent and purpose on the part of said Nancy and son Jacob
to cheat and defraud this respondent."    There seems to have
been no disposition on the part of the plaintiff to conceal the
fact that she had the deed, telling the fact soon after she got
it, that her husband had made a deed to her for the property
and within four months after its execution she placed it upon
record; she says, and some other witnesses say, that she did
so at his suggestion.    He says in his answer, referring to the
date of the recordation of said deed, "That immediately upon
receipt of some information that such writing was in exist-
ence respondent began to make inquiry and investigation
and to his surprise and astonishment he ascertained that
such writing had been made as hereinbefore stated."    And
in his testimony states that he first learned of the existence
of the deed from his son in the wheat field, or at wheat har-
vest in 1889.    A very significant fact was brought out by the
testimony of William M. Ashburn, who testified that he
went to B. A. Swiger to get a lease on the land on which
Swiger lived; that they agreed on a lease; that was in the
evening, and the next morning he went back to Swiger, who
told him the old lady objected to signing the lease;
that he, Ashburn, went into the house to persuade her to
sign the lease, as it was his business to get it, and while they

were talking, Swiger began talking to her persuading her to sign it; that he went out of the house or they went into another room; they were by themselves any how. When he got with them again she agreed to sign the lease and signed it. The lease was made to W. S. Furbee & Co. There is a lease filed as an exhibit with the depositions, dated November 15, 1889, made by Nancy Swiger to W. S. Furbee & Co. The lease taken by Ashburn and which B. A. Swiger induced Nancy to sign was not signed or executed by B. A. Swiger. What could have been the object of the defendant Swiger in having Nancy Swiger to execute the lease if he did not recognize the fact that it was her land? And if hers it could only be such under the deed of September 24; 1888. Under this lease she reserved to herself the one-eighth part of the oil produced and the lessee was to pay her $200, per annum for each and every gas well drilled on the premises, payable within sixty days after the completion of said well, and the lease provided for a rental of fifty cents per acre to be paid to the lessor in case of certain delays mentioned. The evidence in relation to this lease is undenied in any particular by defendant Swiger. Jones on Evidence, section 237, "Whatever a party voluntarily admits to be true, though the admission be contrary to his interest, may reasonably be taken for the truth." So that it is made clear and not denied by Swiger that after he knew of the deed of September 24, 1888, he induced the plaintiff to lease the land as her own and did not at that time lay claim to it, or question her right to lease it, but insisted upon her leasing it. "Where a certificate of acknowledgment is regular on its face a strong presumption exists in favor of its truth, and the burden of proof rests on the party assailing it." 1 Cyc. 623; *Rollins* v. *Menazer*, 22 W. Va. 461. In *Kerr* v. *Russell*, 69 Ill. 666, it is held: "As a fine and recovery at common law was subject to impeachment for fraud, so the certificate of acknowledgment of a deed by a wife may be impeached, but the proof to sustain such charge must be of the clearest, strongest and most convincing character and by disinterested witnesses." And in *McPherson* v. *Sanborn*, 88 Ill. 150, "Very clear and satisfactory proof is required to impeach a certificate of acknowledgment of a deed or mortgage." And in *Tunison* v. *Chamblin*, 88 Ill. 378, it is held: "The certificate

of acknowledgment of a deed imports verity and cannot be overcome except by clear and satisfactory evidence. The evidence of the grantor denying the execution of the deed and the opinion of experts that the signature thereto is not that of the grantor are not sufficient.'' See also *Lickmon* v. *Harding*, 65 Ill. 505. JUDGE HOLT in *Machine Co.* v. *Burlack*, 35 W. Va. 647, at page 657, speaking of the delivery of instruments says: ''First, we must under such circumstances look to the thing done and not to the thing said; and second, a solemn deed is not to be exposed to the danger of falsehood and fraud, nor to the 'uncertain, slippery memory of man.' '' The signature of Ashburn, the notary public, to the certificate of acknowledgment is unquestioned, and there is no charge in the pleadings that the notary acted fraudulently or that he did not make such certificate in good faith. The presumption is that he did his duty. The statute prescribes his duty in the premises and the certificate is in accordance therewith, and when a duty is laid upon a public officer the presumption is that he performs it according to law and the contrary must be shown by the objecting party. *Lamb* v. *Cecil*, 25 W. Va. 288. The notary, Ashburn, was dead before this litigation. Defendant B. A. Swiger testified that Dr. Amaziah Ashburn, the notary, had his son write a paper for him which he signed, to the effect that defendant had never signed or acknowledged the deed before him and that Lovina Swiger and Valentine Underwood testified that they were present when Francis did the writing but did not know just what he wrote, and gave to Benoni. But Francis on the other hand swears absolutely that no such a thing ever took place; that he was not called upon by his father to do such writing; it was absolutely false. The defendant failed to produce any such writing and failed to account satisfactorily for its non production.

After a careful review of the whole cause I am unable to see that the circuit court erred in its decree, and therefore the same is affirmed.

*Affirmed.*